Filed: March 31, 2006

UNITED STATES COURT OF APPEALS

FOR THE FOURTH CIRCUIT

_____

No. 04-7269
(CA-03-859)

_____

ANTHONY ANDREWS,

                              Plaintiff - Appellant,

        versus

UNITED STATES OF AMERICA,

                              Defendant - Appellee.

_____

O R D E R

_____

The court amends its opinion filed January 25, 2006, as follows:

On pages 2-15, the case caption header "United States v. Andrews" is changed to "Andrews v. United States."

                              For the Court

                              /s/ Patricia S. Connor
                              _____
                                        Clerk

UNITED STATES COURT OF APPEALS

FOR THE FOURTH CIRCUIT

No. 04-7269
(CA-03-859)

ANTHONY ANDREWS,

Plaintiff - Appellant,

versus

UNITED STATES OF AMERICA,

Defendant - Appellee.

O R D E R

The court amends its opinion filed January 25, 2006, as follows:

On the cover sheet, the party designation of the United States is changed from "Plaintiff-Appellee" to "Defendant-Appellee," the party designation of Anthony Andrews is changed from "Defendant-Appellant" to "Plaintiff-Appellant," and the case caption is realigned to reflect this change.

On page 3, line 1, the date "September 17, 2002" is replaced with "January 7, 2003."

For the Court

/s/ Patricia S. Connor

_____
Clerk

**PUBLISHED**

# UNITED STATES COURT OF APPEALS

## FOR THE FOURTH CIRCUIT

ANTHONY ANDREWS,
              *Plaintiff-Appellant,*

v.

UNITED STATES OF AMERICA,
              *Defendant-Appellee.*

}

No. 04-7269

Appeal from the United States District Court for
the Eastern District of Virginia, at Richmond.
Richard L. Williams, Senior District Judge.
(CA-03-859)

Argued: September 22, 2005

Decided: January 25, 2006

Before WILLIAMS, KING, and SHEDD, Circuit Judges.

Reversed and remanded with instructions by published opinion. Judge
Williams wrote the majority opinion, in which Judge Shedd concurred.
Judge King wrote a dissenting opinion.

## COUNSEL

**ARGUED:** Alistair Elizabeth Newbern, Supervising Attorney,
GEORGETOWN UNIVERSITY LAW CENTER, Appellate Litigation
Program, Washington, D.C., for Appellant. Robert P. McIntosh,
Assistant United States Attorney, OFFICE OF THE UNITED STATES
ATTORNEY, Richmond, Virginia, for Appellee. **ON BRIEF:** Steven
H. Goldblatt, Director, Heather Kissel, Student Coun-

sel, Randi Wallach, Student Counsel, GEORGETOWN UNIVER-SITY LAW CENTER, Appellate Litigation Program, Washington, D.C., for Appellant. Paul J. McNulty, United States Attorney, Alexandria, Virginia, for Appellee.

## OPINION

WILLIAMS, Circuit Judge:

Anthony Andrews, an inmate in the Federal Correctional Institute — Petersburg, VA (FCI Petersburg), appeals the district court's dismissal of his suit brought under the Federal Torts Claim Act (FTCA), 28 U.S.C.A. §§ 1346 and 2671-2680 (West Supp. 2005), against the United States alleging that the negligence of a Bureau of Prison (BOP) officer caused the loss of his property. The district court concluded that the United States had not waived its sovereign immunity because the BOP officer was covered by the exception to the FTCA set forth in 28 U.S.C.A. § 2680(c), and it therefore dismissed Andrews's complaint for lack of subject-matter jurisdiction. Because we conclude that the BOP officer here is not covered by § 2680(c), we reverse.

I.

On August 27, 2002, Andrews was temporarily transferred from FCI Petersburg to the Eastern District of North Carolina for a hearing. Andrews had accumulated nearly two duffle bags of legal materials related to his case. Recognizing that he could not take all of this material with him to North Carolina, Andrews took only a stack of legal materials and left in his cell locker all his other remaining legal materials and personal property. While he was in North Carolina, FCI Petersburg needed additional cell space, so a BOP officer packed Andrews's belongings and prepared an Inmate Personal Property Record. When completing the form, the BOP officer erroneously indicated that Andrews had been permanently transferred from FCI Petersburg. Because of this error, Andrews's property was shipped from FCI Petersburg and lost.

On January 7, 2003, Andrews returned to FCI Petersburg and found his possessions missing. On January 17, 2003, he filed an administrative claim with the BOP seeking damages for the missing property. The BOP denied his claim, and he filed suit against the United States under the FTCA. On April 13, 2004, the United States moved to dismiss Andrews's suit on the ground of sovereign immunity.

On July 27, 2004, the district court granted the government's motion to dismiss. The court concluded that BOP officers were "law enforcement officer[s]" for purposes of § 2680(c)'s exception to the waiver of sovereign immunity. As a result, the court held that the United States had not waived sovereign immunity for suits against BOP officers for the detention of property, and it dismissed Andrews's suit for lack of subject-matter jurisdiction. Andrews noted a timely appeal.

## II.

We review de novo the district court's interpretation of § 2680(c) and its resulting conclusion that it lacked subject-matter jurisdiction. *See Treacy v. Newdunn Assoc., LLP*, 344 F.3d 407, 410 (4th Cir. 2003). The first step in determining the meaning of a statute is to examine the statute's plain language. *United Seniors Ass'n, Inc. v. Social Sec. Admin.*, 423 F.3d 397, 402 (4th Cir. 2005). In doing so, we look at "the language itself, the specific context in which that language is used, and the broader context of the statute as a whole." *Rob-inson v. Shell Oil Co.*, 519 U.S. 337, 341 (1997).

We begin our analysis with the text of § 2680(c) and its context in the FTCA's statutory scheme. The FTCA broadly waives the sovereign immunity of the United States for monetary claims "for injury or loss of property . . . caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment." 28 U.S.C.A. § 1346(b)(1). Congress limited this broad waiver, however, by retaining sovereign immunity in thirteen distinct areas. One such area is described in § 2680(c), which states:

The provisions of . . . [the FTCA] shall not apply to . . .

(c) Any claim arising in respect of the assessment or collection of any tax or customs duty, or the detention of any goods, merchandise, or other property by any officer of customs or excise or any other law enforcement officer . . . .

Neither Andrews nor the Government disputes that Andrews's negligence claim "aris[es] in respect of . . . the detention . . . of property." Rather, the single point of disagreement is whether the BOP officer here is a "law enforcement officer" within the meaning of the subsection. If he is not such a "law enforcement officer," then sovereign immunity does not bar Andrews's complaint. If he is, the United States has retained sovereign immunity from Andrews's suit, and the district court lacked subject-matter jurisdiction to hear it.

A.

Although the Supreme Court and this circuit previously have addressed § 2680(c), neither court has decided the meaning of the phrase "any other law enforcement officer."[1] *See Kosak v. United States*, 465 U.S. 848, 852 (1984) (holding that § 2680(c)'s exception for claims "arising in respect of . . . the detention of goods" includes a claim for damage to the goods during the detention); *Perkins v. United States*, 55 F.3d 910, 915 (4th Cir. 1995) (holding that § 2680(c)'s reference to the assessment or collection of any tax bars only those claims that are "related, however, remotely, to a *bona fide* effort to assess or collect a particular tax debt"). In fact, in *Kosak* the Supreme Court reserved the question of precisely what types of law enforcement officers are covered by § 2680(c). *See* 465 U.S. at 852 n.6 ("We have no occasion in this case to decide what kinds of 'law-enforcement officer[s],' other than customs officials, are covered by the exception." (quoting 28 U.S.C.A. § 2680(c))).

Although the Court in *Kosak* did not determine the meaning of the phrase "any other law enforcement officer," the Court did establish an important interpretative method by which we should construe the phrase. Although it is a familiar canon of statutory construction that ambiguities in waivers of sovereign immunity are to be "strictly con-

---

[1]Nine other circuit courts of appeals have addressed the meaning of 28 U.S.C.A. § 2680(c), as discussed *infra* at Part III.

strued . . . in favor of the sovereign," *see Lane v. Pena*, 518 U.S. 187, 192 (1996), in *Kosak*, the Court rejected the Government's argument that the corollary of this canon was also true — that *exceptions* to waivers of sovereign immunity should be *broadly* construed in favor of the sovereign. 465 U.S. at 853 n.9. Instead, the Court instructed that the correct approach in construing the meaning of § 2680(c) is "to identify those circumstances which are within the words and reason of the exception — no less and no more." *Id.* (internal quotation marks omitted). Otherwise, "unduly generous interpretations of the exceptions run the risk of defeating the central purpose of the [FTCA]." *Id.* Under *Kosak*, then, our task is to interpret the phrase "any other law enforcement officer" without placing a thumb on the scale for the benefit of the sovereign.[2] Instead, we must determine precisely who is a "law enforcement officer" under § 2680(c).

B.

1.

Andrews claims that his property was lost due to the negligence of a BOP officer, who in the abstract is assuredly a "law enforcement officer." But before we can conclude that the BOP officer here is a "law enforcement officer" within the meaning of § 2680(c), we must determine whether the context of the statute limits the "any other law enforcement officer" phrase. Examining the phrase in context is necessary because "[w]e do not . . . construe statutory phrases in isolation; we read statutes as a whole." *United States v. Morton*, 467 U.S. 822, 828 (1984). In fulfilling this requirement, we find particularly applicable the *ejusdem generis* and *noscitur a sociis* canons of statutory construction. These related canons remove the phrase from the abstract and give it the meaning the context demands. *Cf. Wash. State Dep't of Soc. and Health Servs. v. Keffeler*, 537 U.S. 371, 383-84 (2003) (concluding after applying the canons of *ejusdem generis* and *noscitur a sociis* that the contextual meaning of the term "other legal

---

[2]In *Perkins v. United States*, 55 F.3d 910 (1995), we stated that "[§ 2680(c)], as with all provisions of the FTCA, must be . . . construed in favor of the sovereign." *Id.* at 913 (internal quotation marks omitted). As explained in the text, the Supreme Court has explicitly rejected this approach. We therefore apply the approach directed by *Kosak*.

process" is more restrictive than the meaning the term would have in the abstract). Applying these canons, we conclude that the meaning of "law enforcement officer" in the context of § 2680(c) is narrower than its meaning in the abstract.

According to the *ejusdem generis* canon, "[a] general word or phrase [that] follows a list of specifics . . . will be interpreted to include only items of the same type as those listed." Black's Law Dictionary 556 (8th ed. 2004). In other words, we apply the *ejusdem generis* canon to determine the meaning of a catch-all phrase by looking to the common elements among the specific things mentioned in the list. For example, "if a statute lists 'fishing rods, nets, hooks, bobbers, sinkers and other equipment,' 'other equipment' might mean plastic worms and fishing line, but not snow shovels or baseball bats." *Bazuaye v. United States*, 83 F.3d 482, 484 (D.C. Cir. 1996) (internal citation omitted); *see also Reiche v. Smythe*, 80 U.S. 162 (1871) (applying the *ejusdem generis* canon to conclude that "birds" are not "other live animals" for the purpose of a statute establishing customs duties for "all horses, mules, cattle, sheep, hogs, and other live animals"). In these examples, isolating the general phrase from the specific things mentioned would result in the statute encompassing far more than the context of the statute suggests the legislature intended.

Section 2680(c) presents a textbook *ejusdem generis* scenario. It contains a general phrase — "any other law enforcement officer" — that follows a recitation of specific things — "any officer of customs or excise" — whose similar characteristic is that they are charged with the function of enforcing the revenue laws (customs and tax, respectively) of the United States. Applying the *ejusdem generis* canon to § 2680(c), a DEA officer detaining property to enforce the customs laws is a "law enforcement officer" because he is performing a function similar to an "officer of customs or excise," *see e.g.*, *Formula One Motors, Ltd. v. United States*, 777 F.2d 822, 824 (2d Cir. 1985), but the BOP officer moving Andrews's belongings to make room for another inmate would not be a "law enforcement officer" because he is not performing a customs or excise function.

Similar to the canon of *ejusdem generis* is the canon of *noscitur a sociis*. According to the *noscitur a sociis* canon, the meaning of an undefined word or phrase "should be determined by the words imme-

diately surrounding it." Black's Law Dictionary 1087 (8th ed. 2004). This canon infuses into "law enforcement officer" a "meaning [gathered] from the words around it." *Jarecki v. G.D. Searle & Co.*, 367 U.S. 303, 307 (1961) (concluding that in a statute referring to "[i]ncome resulting from exploration, discovery, or prospecting" the word "discovery" is limited to only drilling and mining activities because the other words "strongly suggest that a precise and narrow application [of the word 'discovery'] was intended"). A more recent example of the application of the *noscitur a sociis* canon is found in *Gutierrez v. Ada*, 528 U.S. 250 (2000), in which the Supreme Court examined the meaning of the phrase "in any election" as used in the Guam Organic Act. *Id.* at 254-258. Despite the unqualified language of the phrase, the Court instructed that "[t]he key to understanding . . . the phrase" is to look at the references surrounding it in the statute. *Id.* at 254. Because the other words in the statute related solely to gubernatorial elections, the Court determined that Congress did not "shift its attention" from the context of gubernatorial elections when using the unqualified general phrase "in any election" but instead intended for the phrase to refer only to gubernatorial elections. *Id.* at 255.

Applying the *noscitur a sociis* canon here, we are convinced that § 2680(c)'s specific references to the enforcement of tax and customs laws indicates that the "law enforcement officer" referenced therein should be limited to those officers acting in a tax and customs enforcement capacity. The opening clause of § 2680(c) refers solely to claims arising from the specific actions of assessing or collecting a tax or customs duty. 28 U.S.C.A. § 2680(c) ("Any claim arising in respect of the assessment or collection of any tax or customs duty . . . ."). We have interpreted this clause to mean that the exemption applies *only* to those actions that are "related, however remotely, to a *bona fide* effort to assess or collect" a tax or customs duty. *See Perkins*, 55 F.3d at 915. The next clause of § 2680(c) makes reference to the detention of property by specific government officials whose job is to enforce the tax and customs laws. 28 U.S.C.A. § 2680(c)(". . . any officer of customs or excise . . . ."). These "clauses both dwell exclusively on customs and taxes," *A-Mark, Inc. v. U.S. Secret Service*, 593 F.2d 849, 851 (9th Cir. 1978) (Tang, J., concurring), and the fact that they have a clear and defined meaning limited to the enforcement of the tax and customs laws confirms that Congress did not

"shift its attention" outside of the tax and customs context when it added the unqualified "any other law enforcement officer" phrase. Instead, the limitation of § 2680(c) to tax and customs activities indicates that Congress intended the meaning of "law enforcement officer" to be limited to the specific focus of the rest of § 2680(c) — the assessment or collection of tax or customs duties or the detention of property associated with these activities. Because the BOP officer was not performing such a function, he is not a "law enforcement officer" for purposes of § 2680(c).[3]

2.

Our reading of § 2680(c) is in accord with a principal reason for the subsection: to avoid extending the FTCA "to suits for which adequate remedies were already available." *Kosak*, 465 U.S. at 858.[4] Before the FTCA's enactment, a property owner was able to bring suit against individual customs or tax officers for property damage, for which the United States provided indemnification through 28 U.S.C.A. § 2006 (West Supp. 2005) under certain conditions not relevant here, and this right of action exists even now. *Id.* at 860-61; *Bazuaye*, 83 F.3d at 485 (discussing the history of the rights of action against customs and tax officers). The effect of this statutory indemnification is to skirt the United States' sovereign immunity by providing a back-door entry to the federal fisc to obtain monetary damages: the historical suit is against a customs or tax officer, but the United States pays the judgment. Because "adequate remedies" existed for claims arising from the enforcement of the customs or tax laws, it was

---

[3]Our dissenting colleague contends that "the plain meaning of the phrase 'any other law enforcement officer' . . . is just that — any other law enforcement officer." *Post* at 14. With respect, we cannot divorce the plain words from their context. *See Food and Drug Admin. v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 133 (2000) ("It is a fundamental canon of statutory construction that the words of a statute *must be read in their context* and with a view to their place in the overall statutory scheme." (emphasis added and internal quotation marks omitted)).

[4]The other reasons for the exception were to ensure that "certain governmental activities [are] not disrupted by the threat of damage suits" and to avoid exposing "the United States to liability for excessive or fraudulent claims." *Kosak v. United States*, 465 U.S. 848, 858 (1984).

unnecessary to include those claims within the FTCA's waiver of sovereign immunity. Conversely, at the time of the FTCA's enactment, plaintiffs enjoyed no similar right to sue law enforcement officers acting outside a customs and tax enforcement capacity. Holding that BOP officers are "law enforcement officer[s]" under § 2680(c) would, at the time of the FTCA's enactment, not have denied plaintiffs a duplicate remedy, but rather would have denied them of any remedy at all.[5]

## C.

The Government argues that the meaning of "law enforcement officer" in § 2680(c) should be determined by construing that subsection in light of § 2680(h), which defines an "investigative or law enforcement officer" in terms that encompass BOP officers.[6] Under the *in*

---

[5]Since 1922, Congress has authorized agency heads to settle, for not more than $1000, claims involving the negligence of governmental employees. *See* 31 U.S.C.A. § 3723 (West 2003); *Bazuaye v. United States*, 83 F.3d 482, 486 n.3 (D.C. Cir. 1996). This administrative settlement applies to loss of a prisoner's property by the negligence of a BOP officer. 31 U.S.C.A. § 3723 (authorizing an administrative settlement for the ". . . loss of . . . property . . . caused by the negligence of an officer or employee of the United States Government . . ."). Because, however, this remedy does not allow a judicial suit and provides only limited recovery, it has never been duplicative of the remedy available through the FTCA. *See Bazuaye*, 83 F.3d at 486 n.3.

While other statutory or judicially created remedies may now exist for plaintiffs such as Andrews, we are aware of no other remedy in existence at the time of the FTCA's enactment in which a plaintiff could receive payment from the federal fisc.

[6]Section 2680(h) exempts from the FTCA's waiver of sovereign immunity,

Any claim arising out of assault, battery, false imprisonment, false arrest, malicious prosecution, abuse of process, libel, slander, misrepresentation, deceit, or interference with contract rights: *Provided*, That, with regard to acts or omissions of investigative or law enforcement officers of the United States Government, the provisions of this chapter and section 1346(b) of this title shall apply to any claim arising . . . out of assault, battery,

*pari materia* canon, neighboring statutory subsections that refer to the same subject matter "must be read . . . as if they were a single statute." *Virginia Int'l Terminals, Inc. v. Edwards*, 398 F.3d 313, 317 (4th Cir. 2005). The Government's proposed application of the *in pari materia* canon is erroneous, however, because Congress expressly limited the definition of "investigative or law enforcement officer" to § 2680(h). *See* 28 U.S.C.A. § 2680(h) ("*For the purpose of this subsection*, 'investigative or law enforcement officer' means . . . ." (emphasis added)). To apply the § 2680(h) definition beyond that subsection would make meaningless the limitation that Congress placed on the definition. *Cf. United States v. Amada*, 200 F.3d 647, 650-651 (9th Cir. 2000) (refusing to apply the *in pari materia* canon to define a term in another statute when the definition of the term in one statute was expressly limited to that statute).

The Government also contends that the amendment to § 2680(c) in the Civil Asset Forfeiture Act of 2000 (CAFRA), Pub. L. No. 106-185, 114 Stat. 211 (April 25, 2000), compels us to conclude that BOP officers are "law enforcement officer[s]" for purposes of § 2680(c). CAFRA created an exception to § 2680(c) that re-waived sovereign immunity for claims for property damage occurring while property was detained for an ultimately unsuccessful civil forfeiture.[7] The Gov-

---

false imprisonment, false arrest, abuse of process, or malicious prosecution. For the purpose of this subsection, "investigative or law enforcement officer" means any officer of the United States who is empowered by law to execute searches, to seize evidence, or to make arrests for violations of Federal law.

28 U.S.C.A. § 2680(h).

[7]CAFRA added, inter alia, the following exception to the end of § 2680(c):

[T]he provisions of this chapter and section 1346(b) of this title apply to any claim based on injury or loss of goods, merchandise, or other property, while in the possession of any officer of customs or excise or any other law enforcement officer if —

(1)  the property was seized for the purpose of forfeiture under any provision of Federal law providing for the forfeiture of property other than as a sentence imposed upon conviction of a criminal offense;

ernment argues that interpreting "law enforcement officer" to encompass only those law enforcement officers acting in a tax or customs capacity would make the CAFRA amendment meaningless because adequate remedies already existed for property damage claims arising from tax and customs enforcement. We disagree. The remedy created by CAFRA is different from the historical remedy against customs and tax officers. To recover against the United States through the historical remedy, a plaintiff must show, inter alia, that the customs or tax officer acted without probable cause. 28 U.S.C.A. § 2006. The CAFRA remedy, however, has no such requirement. Instead, if a plaintiff satisfies CAFRA's four-part showing, he only need show that the customs or tax officer acted negligently. *See* 28 U.S.C.A. § 2680(c). We therefore reject the Government's argument that our interpretation of "law enforcement officer" renders CAFRA superfluous.[8]

---

(2)  the interest of the claimant was not forfeited;

(3)  the interest of the claimant was not remitted or mitigated (if the property was subject to forfeiture); and

(4)  the claimant was not convicted of a crime for which the interest of the claimant in the property was subject to forfeiture under a Federal criminal forfeiture law.

28 U.S.C.A. § 2680(c).

[8]In addition to the arguments noted in the text, the Government also argues that the legislative history of CAFRA supports an expansive construction of "law enforcement officer" that includes the BOP officer in this case. Because we conclude that the text of and reason for § 2680(c) compels a narrow construction of "law enforcement officer," it is unnecessary for us to consider the legislative history. Even if we were to do so, we note that the Government is mistaken to rely on CAFRA's legislative history to determine the meaning of the "any other law enforcement officer" phrase. The phrase is original to § 2680(c); therefore, it is the intent of the Congress that enacted the original subsection that controls. *See Mackey v. Lanier Collection Agency*, 486 U.S. 825, 840 (1988) ("[T]hese [Committee Report] views — absent an amendment to the original language of the section — do not direct our resolution of this case . . . . It is the intent of the Congress that enacted [the section] . . . that controls." (internal quotation marks omitted, second alteration original)).

### D.

In accordance with the text of and reason for § 2680(c), we conclude that the phrase "any other law enforcement officer" is limited to those officers acting in a tax or customs capacity. Because the BOP officer who moved Andrews's property was not acting in this capacity, § 2680(c) does not bar Andrews's complaint.

### III.

Our decision places us in agreement with three Courts of Appeals — the Sixth, Seventh, and District of Columbia Circuits — that have held that "law enforcement officer" in § 2680(c) refers only to those law enforcement officers acting in a tax or customs capacity. *See Kurinsky v. United States*, 33 F.3d 594, 598 (6th Cir. 1994) (FBI agents not included); *Ortloff v. United States*, 335 F.3d 652, 660 (7th Cir. 2003) (BOP officers not included); *Bazuaye*, 83 F.3d at 486 (postal inspectors not included).[9] These courts reached their decisions, as we have, after applying the canons of *ejusdem generis* and *noscitur a sociis* and after examining the reason Congress included the exception of § 2680(c) in the FTCA. *Kurinsky*, 33 F.3d at 596-98; *Ortloff*, 335 F.3d at 658-59; *Bazuaye*, 83 F.3d at 484-86.

We recognize that six other Courts of Appeals — the Fifth, Eighth, Ninth, Tenth, Eleventh, and Federal Circuits — have concluded that "law enforcement officer" is not limited to officers acting in a tax or customs capacity.[10] *See Chapa v. U.S. Dep't of Justice*, 339 F.3d 388,

---

[9]In *Formula One Motors, Ltd. v. United States*, 777 F.2d 822, 824 (2d Cir. 1985), the Second Circuit reached a decision consistent with the minority view, but did not expressly adopt this view. *Id.* at 823-24 ("[W]e are satisfied that the detention of the automobile and its search by DEA agents fell within the scope of section 2680(c), without determining whether the exemption would apply to searches by law enforcement officers with no relationship to the customs or excise functions . . . . The seizure of an automobile still in transit from overseas and a search of that automobile for narcotics are sufficiently akin to the functions carried out by Customs officials to place the agents' conduct within the scope of section 2680(c).").

[10]We have uncovered no First or Third Circuit decisions addressing the meaning of § 2680(c)'s "any other law enforcement officer" phrase. *Cf.*

390 (5th Cir. 2003) (BOP officers included); *Cheney v. United States*, 972 F.2d 247, 248 (8th Cir. 1992) (federal drug task force officers included); *Bramwell v. U.S. Bureau of Prisons*, 348 F.3d 804, 807 (9th Cir. 2003) (BOP officers included); *Hatten v. White*, 275 F.3d 1208, 1210 (10th Cir. 2002) (same); *Schlaebitz v. U.S. Dep't of Justice*, 924 F.2d 193, 195 (11th Cir. 1991) (United States Marshals included); *Ysasi v. Rivkind*, 856 F.2d 1520, 1525 (Fed. Cir. 1988) (determining that the 11th Circuit would conclude that Border Patrol Agents are "law enforcement officer[s]"). With respect to these courts, we agree that "[w]hile the quantity of circuits favors the government's position, the quality of decisions favors [Andrews's] view." *Ortloff*, 335 F.3d at 659. None of the courts adopting the majority view applied the *ejusdem generis* or *noscitur a sociis* canons. In fact, the only canons of construction applied by any of the courts that have adopted the majority view are that § 2680(c) should be construed in favor of the sovereign, *see, e.g.*, *Chapa*, 339 F.3d at 390, and that § 2680(c) should be construed *in pari materia* with § 2680(h), *see, e.g.*, *id.*; *Bramwell*, 348 F.3d at 807. In *Kosak*, the Supreme Court rejected this application of the first canon, and for the reasons discussed in Part II.C., supra, we believe that the application of the *in pari materia* canon is improper.

## IV.

Andrews also claims that the district court docket sheet incorrectly lists that his suit was "dismissed as frivolous pursuant to [the] Prisoner Litigation Reform Act."[11] Because we conclude that the district court erred in dismissing Andrews's suit, it necessarily follows that Andrews's suit was not frivolous. *See Adepegba v. Hammons*, 103 F.3d 383, 387 (5th Cir. 1996) (concluding that when a case dismissed as frivolous under PLRA is reversed on appeal, the "strike" is nulli-

---

*United States v. Bein*, 214 F.3d 408, 415-416 (3d Cir. 2000) (noting in dicta that "[i]f a party were to proceed under the FTCA on a negligence theory, then his or her claim *might* be barred because the lost or damaged property was detained by law enforcement officials" (emphasis added)).

[11]The district court's order never specifically characterized Andrews's suit as frivolous; instead, it simply directed the clerk to note the disposition of the case for purposes of the PLRA.

fied). On remand, the district court should make the necessary correc-
tions to the records.

## V.

For the foregoing reasons, we hold that § 2680(c) did not divest the
district court of jurisdiction over Andrews's complaint because the
BOP officer who allegedly caused the loss of his property is not a
"law enforcement officer" within the meaning of that subsection. We
therefore reverse the district court's order dismissing Andrews's com-
plaint for lack of subject-matter jurisdiction and remand for proceed-
ings consistent with this opinion.

*REVERSED AND REMANDED WITH INSTRUCTIONS*

KING, Circuit Judge, dissenting:

Although I appreciate the panel majority's thoughtful analysis of
the general purposes of the Tort Claims Act and the various canons
of statutory construction, I view such an analysis as unnecessary to
resolve this appeal. In my view, the plain meaning of the phrase "any
other law enforcement officer," as found in 28 U.S.C. § 2680(c), is
just that — any other law enforcement officer. As we have consis-
tently recognized, when statutory language is plain and unambiguous,
our inquiry is at its end, and we then simply apply the statute accord-
ing to its terms. *See Stiltner v. Beretta U.S.A. Corp.*, 74 F.3d 1473,
1482 (4th Cir. 1996) (en banc) ("If the [statutory] language is plain
and unambiguous, we look no further.").

The majority finds ambiguous the phrase "any other law enforce-
ment officer," drawing its view from the fact that it is found in a stat-
ute principally concerning the Government's customs and excise
activities.* However, that fact alone is not enough to render ambigu-
ous an otherwise unambiguous phrase. In ruling that the immunity

---

*Although the majority does not expressly conclude that the phrase
"any other law enforcement officer" is ambiguous, it does so by implica-
tion in applying the canons of statutory construction. It is settled law that
we only apply the canons of construction if we first conclude that the
statutory language is ambiguous. *See Stiltner*, 74 F.3d at 1482.

protections accorded the Government and its officials by § 2680(c) does not reach the detention of property claim in this proceeding, the panel majority essentially adds the words "acting in a customs or excise capacity" to that provision's concluding phrase, "any other law enforcement officer." Our task in the judiciary, of course, is to interpret a statute as enacted — not to rewrite it.

Although I am a lone voice on this panel, I am not alone in espousing this position. Six of the nine courts of appeal to have addressed this issue agree with my view. *See Halverson v. United States*, 972 F.2d 654, 656 (5th Cir. 1992) (concluding that "plain language" of § 2680(c) encompasses property detentions by law enforcement officers acting in any capacity); *see also Bramwell v. U.S. Bureau of Prisons*, 348 F.3d 804, 806-07 (9th Cir. 2003); *Hatten v. White*, 275 F.3d 1208, 1210 (10th Cir. 2002); *Cheney v. United States*, 972 F.2d 247, 248-49 (8th Cir. 1992); *Schlaebitz v. U.S. Dep't of Justice*, 924 F.2d 193, 194-95 (11th Cir. 1991); *Ysasi v. Rivkind*, 856 F.2d 1520, 1524-25 (Fed. Cir. 1988).

If Congress had intended § 2680(c) to apply only to those law enforcement officers acting in a customs or excise capacity, it could, and would, have done so explicitly. Because it failed to do so, I would have our Court adopt the majority view — that adhered to by the Fifth, Eighth, Ninth, Tenth, Eleventh, and Federal Circuits — and enforce § 2680(c) according to its plain terms; withholding jurisdiction over (and according sovereign immunity for) claims arising out of detentions of property by a federal law enforcement officer acting in any capacity. In this proceeding, Andrews, a federal prisoner, seeks to sue the United States for an alleged property loss caused by an officer of the Federal Bureau of Prisons. In my view, and in the view of six of our sister circuits, such an officer is "any other law enforcement officer" under § 2680(c), and the United States is thus entitled to claim sovereign immunity on the cause of action asserted here. *See Bramwell*, 348 F.3d at 806-07 (according immunity to United States under § 2680(c) for acts of Bureau of Prisons officer). I would therefore affirm the district court's dismissal of Andrews's complaint for lack of subject matter jurisdiction.

I respectfully dissent.